IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| Securities and Exchange Commission, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:09cv00470-DW |
| Horst W. Schroeder, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its complaint, alleges as follows:

## SUMMARY

1. During its fiscal years ended September 27, 2002 and October 3, 2003, and the first and second quarters of its fiscal year ended October 1, 2004, American Italian Pasta Company ("AIPC") inflated its reported income and earnings per share ("EPS") through a scheme orchestrated by former AIPC's senior executives, including the company's former chief executive officer ("CEO") and former chief financial officer ("CFO"). During the first, second and third quarters of AIPC's 2004 fiscal year, Horst W. Schroeder ("Schroeder" or "Defendant"), Chairman of AIPC's board of directors, was provided with information showing that a $3.4 million receivable recorded at the end of AIPC's 2003 fiscal year was not valid and collectible. Schroeder, however, failed to communicate this information to the audit committee of AIPC's board of directors or to other members of AIPC's board of directors. As a result, the improper receivable was not immediately corrected or written off and AIPC's financial statements

contained in its Forms 10-K for its 2003 and 2004 fiscal years, and in its Forms 10-Q for the first, second, and third quarters of its 2004 fiscal year, as originally filed with the Commission, were materially misstated in part because of the $3.4 million receivable.

2. As a result of his conduct, Schroeder, directly and indirectly, has engaged in, and unless restrained and enjoined by this Court, will in the future engage in, transactions, acts, practices, and courses of business that violate Section 17(a)(3) of the Securities Act of 1933 ("Securities Act")[15 U.S.C. § 77q(a)(3)] and Rule 13b2-1 under the Securities Exchange Act of 1934 ("Exchange Act") [17 C.F.R. § 240.13b2-1] and that aid and abet violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

3. The Commission brings this action pursuant to the authority conferred upon it by Section 20 of the Securities Act [15 U.S.C. § 77t] and Section 21 of the Exchange Act [15 U.S.C. § 78u] for an order permanently restraining and enjoining Defendant, imposing on Defendant a civil money penalty, and granting other equitable relief.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa]. Venue lies in this Court pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

5. Certain of the transactions, acts, practices and courses of business constituting the violations of law alleged herein occurred within this judicial district.

6. In connection with the transactions, acts, practices, and courses of business described in

this Complaint, Defendant, directly or indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, of the facilities of a national securities exchange, and/or of the means and instruments of transportation or communication in interstate commerce.

## RELATED ENTITY AND DEFENDANT

7. AIPC is a Delaware corporation with its principal place of business in Kansas City, Missouri. The company produces and markets dry pasta. At all relevant times, AIPC's common stock was registered pursuant to Section 12(b) of the Exchange Act, and the company filed annual, quarterly, and current reports with the Commission on Forms 10-K, 10-Q, and 8-K, respectively. The company's fiscal year end is the last Friday of September or the first Friday of October, resulting in either a 52 or 53-week fiscal year. AIPC filed Forms S-8 in May 2004 and in March 2005, which incorporated by reference certain periodic reports. AIPC's common stock was traded on the New York Stock Exchange ("NYSE") until December 20, 2006, when the NYSE suspended trading based on AIPC's failure to keep current its Commission filings. In June 2008, AIPC filed the quarterly and annual reports that it had failed to timely file and has been current in its filings with the Commission since that time.

8. Defendant Horst W. Schroeder, of Hilton Head Island, South Carolina, was Chairman of AIPC's board of directors from approximately 1992 to October 2005, when he resigned his position. Following his resignation as Chairman, Schroeder continued to serve as a director of AIPC until January 2006, when he resigned from AIPC's board of directors. At all relevant times, AIPC's CEO reported to Schroeder. Schroeder maintained regular contact with the CEO and evaluated his performance. Schroeder also conducted quarterly meetings with AIPC's CEO, and with other senior AIPC executives, in which Schroeder reviewed and discussed the company's budgets, strategies, financial performance, and challenges. During his tenure as

Chairman of AIPC's board of directors, Schroeder signed all of the Forms 10-K that AIPC filed with the Commission.

## FACTS

9. From AIPC's fiscal year 2002 through the second quarter of its fiscal year 2004, AIPC emphasized that the company had consistently met EPS targets and predicted AIPC would continue to generate exceptional income and EPS growth. During this time period, however, AIPC failed to achieve its income and EPS growth targets. In response, AIPC engaged in a variety of fraudulent accounting to increase the company's reported income and EPS.

10. As a result, in its quarterly and annual financial statements for its 2002, 2003, and 2004 fiscal years, AIPC reported materially misstated income and EPS. AIPC included these misleading financial results in Forms 10-K and 10-Q filed with the Commission, and in earnings releases attached to Forms 8-K filed with the Commission.

11. In October 2005, AIPC announced that it would restate financial results for these periods, and in June 2008 AIPC filed restated consolidated financials statements. The restatement reduced AIPC's pre-tax income for fiscal year 2002 through the second quarter of fiscal year 2004 by approximately $59 million or 66 percent. AIPC admitted in the June 2008 filing that the restatement "corrects errors arising from poor record keeping, recording transactions without economic substance, recording unsupported journal entries to the general ledger, not maintaining a proper tone as to internal controls and failure to adjust accounts for required amounts."

**The $3.4 Million Receivable**

12. From fiscal year 2001 through fiscal year 2003, AIPC acquired several large pasta brands such as Mueller's, Golden Grain, and Anthony's. AIPC's sales of this branded pasta required AIPC to incur trade promotion expenses, which included product discounts, promotions, advertising, and volume rebates.

13. In accordance with Generally Accepted Accounting Principles ("GAAP"), AIPC accounted for its trade promotion spending by recognizing a promotional expense and accruing a corresponding liability at the time of sale and then reducing the liability when AIPC paid its customer for the promotion. AIPC's payment for promotions generally took the form of deductions by its customers from their payments to AIPC. AIPC based the promotional expense and liability accrual at the time of sale on its annual promotional spending estimate. The expense and liability were to be "trued up" if actual promotional spending for the year differed from the estimate.

14. During fiscal years 2002 and 2003, AIPC's actual promotional spending consistently outpaced its estimated promotional spending and, as a result, the company's promotional liability was consistently too low.

15. By the beginning of the fourth quarter of 2003, AIPC was faced with a significant liability deficiency in the company's promotional liability. As a result, AIPC's CEO and CFO knew that AIPC needed to record a large expense to eliminate the deficiency. Further, the CEO and CFO knew that recording the expense would cause AIPC to miss its earnings expectations.

16. The CEO then informed Schroeder of the liability deficiency in the company's promotional liability. In response, Schroeder counseled the CEO to identify customers that had taken promotional deductions improperly, and to utilize executive management, including the CEO, to collect the receivables.

17. Following the CEO's conversation with Schroeder, the CEO and CFO ordered an internal review of payment deductions taken by AIPC's customers. The goal of the review was to justify the booking of a receivable to reduce the promotional liability shortage, and the CEO instructed that the review should "target identification of $3 to $4 million" of deductions.

18. An internal memorandum generated during the review concluded that the success rate for obtaining reimbursement from customers would be small, and stated that AIPC should not book a receivable for potentially improper deductions. The CEO and CFO disregarded these facts and instead, contrary to GAAP, caused AIPC to book an invalid and uncollectible $3.4 million receivable that was included in AIPC's fiscal year 2003 Form 10-K filed at the end of December 2003.

19. Thereafter, during the first, second, and third quarters of AIPC's 2004 fiscal year, Schroeder was provided with information showing that the $3.4 million receivable was not valid and collectible.

20. In May 2004, Schroeder signed AIPC's Form S-8 registration, which specifically incorporated by reference AIPC's fiscal year 2003 Form 10-K, which Schroeder also signed and which Schroeder should have known was materially misstated in part because of the invalid and uncollectible $3.4 million receivable.

21. AIPC's financial statements contained in its Forms 10-K for its 2003 and 2004 fiscal years and in its Forms 10-Q for the first, second, and third quarters of its 2004 fiscal year, as originally filed with the Commission, were materially misstated in part because of the invalid and uncollectible $3.4 million receivable.

**FIRST CLAIM FOR RELIEF**
**(Section 17(a)(3) of the Securities Act)**
**15 U.S.C. § 77q(a)(3)**

22. Plaintiff repeats and realleges paragraphs 1 through 21 above.

23. By engaging in the conduct described herein, Schroeder violated, and unless restrained and enjoined will in the future violate, Section 17(a)(3) of the Securities Act.

## SECOND CLAIM FOR RELIEF
### (Rule 13b2-1 under the Exchange Act)
### 17 C.F.R. § 240.13b2-1

24.     Plaintiff repeats and realleges paragraphs 1 through 21 above.

25.     By engaging in the conduct described herein, Schroeder violated and unless restrained and enjoined will violate Rule 13b2-1 under the Exchange Act.

## THIRD CLAIM FOR RELIEF
### (Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13)
### 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13

26.     Plaintiff repeats and realleges paragraphs 1 through 21 above.

27.     By engaging in the conduct described herein, Schroeder aided and abetted AIPC's violations of, and unless restrained and enjoined will in the future aid and abet violations of, Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder.

## FOURTH CLAIM FOR RELIEF
### (Section 13(b)(2)(A) of the Exchange Act)
### 15 U.S.C. § 78m(b)(2)(A)

28.     Plaintiff repeats and realleges paragraphs 1 through 21 above.

29.     By engaging in the conduct described herein, Schroeder aided and abetted AIPC's violations of, and unless restrained and enjoined will in the future aid and abet violations of, Section 13(b)(2)(A) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.      Find that the Defendant committed the violations alleged;

II.     Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant, his agents, servants,

employees, and attorneys, and all persons in active concert or participation with them, from violating, directly or indirectly, the provisions of law and rules alleged in this complaint;

III. Order Defendant Schroeder to pay a civil money penalty under Section 20(d) of the Securities Act [15 U.S.C. § 77v(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

IV. Grant such other relief as this Court may deem just or appropriate; and

V. Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to enforce the terms of any orders or judgments that may be entered.

Dated: June 22, 2009

Respectfully submitted,

/s/Ian S. Karpel
Mary S. Brady
Ian S. Karpel
Nancy J. Gegenheimer
Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202
Phone: (303) 844-1000
Fax: (303) 844-1010

Designated for Purposes of Receiving Service:
Charles M. Thomas, Assistant United States Attorney
U.S. Attorney's Office
400 E. 9th Street
Kansas City, MO
Telephone: (816) 426-3122
Facsimile: (816) 426-4210